SHARK BROTHERS INCORPORATED,
Plaintiff and Appellant,

v.

CASS COUNTY, North Dakota, Duane Hoehn, as County Auditor of Cass County, North Dakota, and Clarence Miller, as Director of Tax Equalization of Cass County, North Dakota, Defendants and Appellees.

Civ. No. 9322.

Supreme Court of North Dakota.

July 27, 1977.

Rehearing Denied Aug. 31, 1977.

Myer Shark, Fargo, for plaintiff and appellant.

Mervin Nordeng, Cass County State's Atty., Fargo, for defendants and appellees on the brief; no oral argument.

SAND, Justice.

Shark Brothers Incorporated, plaintiff and appellant, (hereinafter Sharks) appealed from an order of Cass County district court, first judicial district, dismissing its complaint for a declaratory judgment and a permanent injunction restraining and enjoining the Cass County officials from listing and assessing certain property belonging to Shark Brothers Incorporated. The assessment in question pertains to the year 1976 and relates to Lots 8–13 and North 16 inches of Lot 14, Block 15 of Keeney & Devitt's Addition to the city of Fargo.

The principal issue on appeal is whether or not the trial court erred in dismissing the complaint under the existing circumstances.

A complaint dated 19 October 1976 sought a declaratory judgment and a permanent injunction.

The complaint also alleged that:

The city of Fargo certified to Cass County an "indication of exemption" from taxation for the property in question for the 1976 taxable year;

The property was entitled to an exemption under § 57–02–08 (23), North Dakota Century Code, because it was and still is devoted exclusively to the operation of an automobile parking lot open for general patronage;

Cass County, through its county auditor, on or about 28 June 1976, certified the tax rolls containing the exemptions to the state tax commissioner_ as correct and thereby approved same;

The Cass County auditor on 28 September 1976, in conjunction with the director of equalization, acting for and on behalf of Cass County, served notice on Sharks that the exemption was to be revoked and that a hearing was scheduled before the board of county commissioners of Cass County on 20 October 1976 at 10:30 a. m., at which time the county commissioners would take action under Chapter 57–14, NDCC;

Cass County had no evidence to overcome the exemption which was granted by the city;

The additional assessment by reason of the revocation of the exemption is grossly discriminatory, inequitable, confiscatory, arbitrary, and void, and is not authorized by Chapter 57–14, NDCC, and unless Cass County is restrained by this Court the defendants will assess penalties and collect

from Sharks the ad valorem taxes on the property for the year 1976.

The Cass County auditor and the other defendants answered the complaint with a general denial, except as to those facts which are not pertinent to the disposition of this case, and filed a motion to dismiss the complaint on the grounds that it does not fall within the purview of § 32–23–01, NDCC (declaratory judgment provision), that the injunctive relief prayed for is prohibited by § 32–05–05(4), (6) NDCC; and that the plaintiff Sharks have not exhausted their administrative remedies pursuant to Chapter 28–32 and Chapter 57–23.1, NDCC.

The district court, on the basis of the verified complaint and to preserve the status quo, issued an order dated 20 October 1976 directing the Cass County officials to show cause, if any they have, on the 27th day of October 1976 at 9:30 o'clock a. m., or as soon thereafter as counsel may be heard, why an order should not be issued restraining each and all of the defendants from denying plaintiff the tax exemption mentioned in the complaint for the year 1976.

The hearing on the order to show cause and on the motion to dismiss were both set on 27 October 1976, at which time counsel for the respective parties made representations to the court which produced the following uncontroverted facts:

The exemption status of the described property for the years 1974 and 1975 had been heard and decided by the appropriate administrative governmental bodies;

The city of Fargo had initially granted an exemption on the described property, along with some other property, pursuant to § 57–02–08(23), NDCC, for the tax year 1976;

The tax list for the tax year 1976 was sent to the county equalization board which went over the tax list and made no change as to the property in question (the record as to any further proceeding for the 1976 tax year is silent);

The property in question for the years 1974 and 1975 (but not for 1976) was before the state tax appeals board which ruled that it was not exempt;

Sharks filed a petition for rehearing which was granted by the state tax appeals board;

The rehearing was originally scheduled for 9 September 1976 but at Sharks' request it was rescheduled to the last of September;

The County took action to change the assessment rolls after the decision of the state tax appeals board for the tax years 1974–1975 but not until it found out that a petition for rehearing with the tax appeals board had been filed;

The Cass County assessment notice dated 23 September 1976 was served upon Sharks advising that the property in question had been assessed and that the property owner could appear on 7 October 1976 to show reasons why it should not be assessed and that the assessment as made would be reviewed and equalized by the board of county commissioners at their next regular meeting; and

Sharks filed formal objections dated 7 October 1976 giving reasons why the property should not be assessed for the year 1976. The court, after hearing the arguments and at the request of Sharks, delayed making a decision on the matter for one week.

On 10 November 1976 the trial court issued its dismissal order, from which Sharks appealed.

Sharks contended before the trial court that because the county equalization board made no change of the assessment on the tax list as to the property in question for the year 1976 this constituted a concession by the county to the city's previous exemption. Sharks also contended that the county auditor under these circumstances was prohibited from listing the property on the assessment books and tax list as provided for in § 57–14–01, NDCC, even though the exemption was subsequently reversed by the tax appeals board for the years 1974 and 1975.

■ This argument is not persuasive. In addition, we find that Chapter 57–14, pertaining to correction of assessments of property, is sufficiently broad to cover the situation as found here.

■ On the subject of enjoining or restraining an administrative agency, the court, in *Chester v. Einarson*, 76 N.D. 205, 34 N.W.2d 418 (1948), had under consideration a case involving a drainage board, which was considered an administrative agency. The court's observation and decision are pertinent to the instant case. The court said:

"Where the law provides an appeal from an order or determination of a board or commission whereby the correctness and validity of the order or decision may be reviewed the remedy so provided, if adequate, must be pursued and a party having the right of appeal may not disregard such remedy and obtain injunctive relief against the enforcement of the order or decision."

See also, 43 C.J.S. *Injunctions* § 25, page 450.

This principle of law applies to the instant case.

■ One of the recognized grounds for granting an injunction is the prevention of multiplicity of suits. See, 42 Am.Jur.2d *Injunctions* § 23, page 756; and 43 C.J.S., *supra*. Multiplicity of suits also has application to the bifurcated procedures because of the similarity.

Sharks, on appeal, contended that the pleadings, specifically the verified complaint in itself, were sufficient for the court to grant the injunction and to proceed with the declaratory judgment. We cannot agree with this contention. The courts do not operate in a vacuum. For that matter, counsel, before the trial court, stated:

"If the Court please, I would like to first point out that all of the information which Mr. Nordeng gave the Court relative to the proceedings before the Tax Appeals Board on the 1974 and the 1975 taxes are matters which the Court would probably take judicial notice of. But they were not pleaded."

Had the matter before the trial court been merely to temporarily hold the 1976 tax question in a status quo until a final decision by the state tax appeal board a different conclusion might have resulted, but that was not the question before the trial court.

As to the basic question involved in this appeal, counsel for Sharks made the following statement to the trial court:

"If the court should hold that we are bound to exhaust our administrative remedies first, and we go to the Board of Tax Appeals and it holds against us, which I'm sure they will, and we appeal the case to the District Court, this Court, in that eventuality, will eventually determine the one legal question that's really involved in this whole business. And likewise here, if we proceed with this lawsuit, the same thing holds true; this Court will also be the one which will ultimately decide the one legal question that's involved."

On appeal, counsel for Sharks, during oral argument, stated that the property was being used in the same manner for the year 1976 as it was used in the years 1974 and 1975. Thus we have no difference in use, and the same legal question is involved in both proceedings. The only difference between the subject matter before the administrative agency and the matter before the district court is the difference in the tax year. Basically, the proposition we have before us amounts to a bifurcation of process which is somewhat related to, but different from, the "doctrine" of exhaustion of administrative remedies.

The North Dakota Supreme Court has dealt with the question or principle of the exhaustion of administrative remedies only on a peripheral basis. In *Bjerke v. Heartso*, 183 N.W.2d 496 (N.D.1971), this Court quoted approvingly from *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), as follows:

"If the court is presented with a case it can decide but some issue is within the

competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue [to the administrative body]."

The Court also said whenever a lawsuit generates an issue that pertains to an administrative agency's area of primary jurisdiction, it is well for the Court to refer that issue to the agency.

In the case entitled *Petition of Village Board of Wheatland*, 77 N.D. 194, 42 N.W.2d 321 (1950), the court in substance held that it was not necessary to petition and seek a rehearing before an appeal may be taken to the courts if the statutes authorize an appeal from the administrative agency.

"The common judicial statement that one must exhaust administrative remedies before going to court is false almost as often as it is true. Even though courts seldom talk in terms of judicial discretion to require or not to require exhaustion, the reality often is that the determinations are highly discretionary." Davis, Administrative Law of the Seventies, Chapter 20, *Exhaustion of Administrative Remedies* § 20.01, p. 446.

"Even though the law is clear that exhaustion is sometimes required and sometimes not, the law is often quite unclear as to when it is required. But, in general the courts try to balance the interest for and against requiring exhaustion, and the courts usually provide some explanation for the results they reach." Davis, Administrative Law of the Seventies, *supra*, § 20.01–1.

■ Based on Davis, Administrative Law of the Seventies, and from examining case law, it seems that whether or not "exhaustion of remedies" may be applied or resorted to in each instance depends on a mixed bundle of considerations not necessarily related to "exhaustion," including, but not limited to, expertise of administrative bodies, statutory interpretation, pure questions of law, constitutional issues, discretionary authority of the courts, primary,

concurrent, or exclusive jurisdiction, inadequacies of administrative bodies, etc. The above factors demonstrate that the doctrine of exhaustion of remedies is not firmly established and is of limited practical use by the courts.

■ However, there is a further consideration having equal or greater significance as to when the court should not consider the same case involving the same points and issues which may be loosely referred to as avoiding bifurcation in those instances where an administrative agency's decision is appealable and is ripe for appeal and review by the judicial process. We believe this has special application to the instant case.

In the instant case the exemption status of the described property for the years 1974 and 1975 was before the administrative agency and had reached the tax appeals board, which had made a decision from which an appeal can be taken to the district court pursuant to the provisions of § 57–23.-1–02, NDCC. The identical question, except for the year 1976, was presented to the district court. The only difference between the matter before the administrative agency and the matter before the district court is the tax year.

Even though Sharks' counsel contended that each year is a separate item and, in his words, constitutes "a new ball game," the use of the property, by admission, remained the same for each year. Consequently, the same legal question is involved in both proceedings. Thus Sharks' argument is left without merit.

■ We do not favor or encourage, nor can we sustain, bifurcated self-induced or self-initiated procedures, one in the administrative process and one in the judicial process covering the same legal questions.

If such bifurcated procedures were encouraged or sustained, it would create duplication, and uncertainty, and waste manpower and money, with no appreciable result, and all without improving the administration of justice. If one side of a proceeding were permitted to proceed both in the administrative channels and the judicial

channels at the same time the other side could also resort to the same procedure. The result would be endless confusion, which we can ill afford.

During oral argument Sharks referred to and contended that Rule 57, NDRCivP, provided for, authorized, and supported their application for a declaratory judgment. Rule 57 does not expand, but merely implements, the provisions of Chapter 32–23, NDCC. Contrary to Sharks' contention, Rule 57 does not authorize the employment of two procedures at the same time on the same question. See, Annotation, 135 A.L.R. 934 for general discussion on use of declaratory judgment while another action is pending. See also, 11 A.L.R.2d 359, p. 379, § 9, which states:

"Where another action is pending in which the tax controversy can be adequately determined and adequate relief can be granted, a declaratory judgment action cannot be maintained even though it would have been an appropriate remedy in the absence of any pending suit."

The instant application for a declaratory judgment did not involve a constitutional question nor did it specifically pertain to the construction or application of a statute. Neither was it claimed that the basic tax statute is ambiguous.

Sharks also claimed that the action of the county officials was discriminatory under both the United States and State Constitution, but did not present facts or cogent reasons to support the claim. We therefore have no justification or a basis for discussing this contention.

The order of the trial court dismissing the complaint is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.