The North Dakota Department of Human Services [DHS], acting through Grand Forks County Social Services [Social Services], appeals from a judgment declaring that settlement proceeds held for Joshua McMullen, a minor, are not available for determining Joshua's share of welfare benefits. We reverse and remand for further proceedings.
In 1982 Joshua sustained "serious and permanent injuries" in an accident while he was riding in an automobile driven by Deborah McMullen, his mother. Marie Nermyr, Joshua's grandmother and guardian ad litem, sued Deborah and Mid-Century Insurance Company on behalf of Joshua. On September 30, 1985, the district court for Walsh County approved a $20,000 settlement of the lawsuit. The order approving the settlement decreed:
 That the $20,000.00 settlement proceeds be disbursed in the following manner:
 * * * * * *
 The net remaining proceeds of $13159.12, shall be invested solely for the benefit of Joshua McMullen in the following manner: The net settlement funds shall be deposited by the guardian ad litem in a prudent manner in certificates of deposit at a financial institution of her choice. The guardian may disburse up to a total of $1000.00 without prior court approval for the benefit of Joshua McMullen. Except for other disbursements made with court approval prior to age of majority, the balance of the funds shall be disbursed to Joshua McMullen at such time as he reaches the majority age.
Nermyr used the authorized $1,000 to benefit Joshua, invested the balance of about $12,000, and later, with court approval, reinvested a portion with another financial institution.
Meanwhile, on October 2, 1985, Deborah applied to Social Services for welfare benefits for Joshua, another child, and herself through Aid For Dependent Children (AFDC). According to Deborah, she informed Social Services that she did not have access to Joshua's settlement. Deborah's application for benefits stated that no other persons were holding available money for her family members and that no legal actions in which her family members would get money or medical benefits were pending. Deborah thereafter received *Page 198 
AFDC payments, medical assistance, and food stamps.
Later, Social Services contacted Deborah about the settlement and, in a letter dated July 24, 1989, notified her that to determine her current eligibility:
 1) YOU MUST PETITION THE COURT TO SEE IF THE FUNDS ARE AVAILABLE [TO] JOSHUA.
 2) WE ALSO NEED VERIFICATION OF WHAT HAPPENED TO THE MONIES SINCE SEPTEMBER, 1985.
 3) WE NEED VERIFICATION OF THE CURRENT BALANCES OF ALL ACCOUNTS THAT THE FUNDS ARE CURRENTLY IN.
 THESE VERIFICATIONS MUST BE RECEIVED BY US BY AUG. 4, 1989 OR YOUR CASE WILL REMAIN CLOSED EFFECTIVE JULY 31, 1989.
On July 31, 1989, Deborah requested a "fair hearing" before the DHS, claiming that Joshua's settlement "cannot be considered `resources' by Human Services."
On August 3, 1989, Nermyr also sought declaratory relief from the same court that restricted use of the settlement, asking
 that the monies awarded to Joshua, and controlled by the guardian ad litem and the court, [are] unavailable to Joshua until his legal majority is attained, are not resources as defined by the North Dakota Department of Human Resources and therefore do not affect the eligibility for social service programs for Deborah McMullen, Joshua's mother. . . .
The DHS moved to dismiss, contending that a declaratory judgment was not the proper procedure to determine the availability of funds for Joshua, and that "[t]he proper course of action would be to submit a good faith petition to the court asking whether the funds from Joshua's personal injury award . . . are accessible." The court denied the motion.
After an evidentiary hearing on the merits, the trial court ruled that it did not have authority to determine Deborah's eligibility for welfare benefits, but that it would decide the accessibility of Joshua's settlement. The court decided
 that the trust fund shall not be available for the purposes sought by [DHS], and therefore a declaratory judgment is herewith ordered forbidding the use of the trust fund as a resource by the [DHS].
On appeal, the DHS contends that because it is not seeking to reach the settlement and because it is not asserting an adverse claim against Joshua, he did not meet the requirements for obtaining declaratory relief. The DHS argues that, instead of seeking a declaration that the settlement was unavailable, Joshua should have asked the court whether or not it was necessary to release money from the settlement for his support. The DHS argues that the court's declaratory relief effectively enjoined it from making an administrative determination about Deborah's eligibility for welfare benefits.
Joshua concedes that the determination of Deborah's eligibility for welfare benefits is an administrative question. Asserting that he was following Social Services' instructions and has met the requirements for declaratory relief, Joshua argues that the trial court properly declared that the settlement was not available for his support at this time.
The declaratory judgment act is remedial and is to be liberally construed and administered. NDCC 32-23-12; Iverson v. Tweeden,78 N.D. 132, 48 N.W.2d 367 (1951). The purpose of declaratory relief is to settle uncertainties about rights, status, and other legal relations in an underlying justiciable controversy. NDCC 32-23-01; 32-23-05; 32-23-12; Iverson v. Tweeden. InIverson, we outlined the criteria for obtaining declaratory relief:
 The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the *Page 199 
controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination. . . .
 In order to present a justiciable controversy under the declaratory judgments act, the complaint must allege facts upon which the court can render a judgment or decree that will terminate the controversy or remove an uncertainty. . . .
 Among the essentials necessary to the raising of a justiciable controversy is the existence of a genuine conflict in the tangible interests of the opposing litigants. Complainant must prove his possession of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right in jeopardy. Although complainant need not necessarily possess a cause of action (as that term is ordinarily used) as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner.
48 N.W.2d at 370-371. Joshua's claim is suitable for declaratory relief.
Joshua has a bona fide legal interest in whether it is necessary to use money from his settlement for his support before he reaches majority. Although the DHS is not directly seeking to reach Joshua's settlement, it notified his mother to "petition the court to see if the funds [were] available." The DHS position creates a claim adverse to Joshua because, if it is necessary to use any settlement money for his current support, the amount of the settlement remaining for Joshua when he reaches majority will be reduced. Conversely, under the regulations for receiving welfare, Deborah's eligibility is affected by the amount and availability of Joshua's "income and resources." See 42 U.S.C.S. § 602(a)(7)(A);45 C.F.R. § 233.20(a)(3)(ii)(D) and (F). Simple computations show that the amount of "income and resources" available to an applicant reduces the amount of welfare benefits paid by the DHS. Those offsetting calculations demonstrate a genuine conflict in tangible, adverse interests of Joshua and the DHS. Those adverse interests create an uncertainty about the effect of Joshua's settlement on the extent of Deborah's eligibility for welfare benefits. A declaratory judgment will settle that uncertainty.
Still, relying on Dahner v. Daner, 374 N.W.2d 604 (N.D. 1985), the DHS argues that Joshua asked the trial court the wrong question. The DHS contends that Joshua should have asked the trial court whether it is necessary to invade the settlement for his support.
Yet, it was the DHS that directed Deborah to "petition the court to see if the funds [were] available [to] Joshua." Joshua asked the court to declare that his settlement was "unavailable" for purposes of determining the extent of Deborah's eligibility for welfare benefits. Joshua brought the declaratory action against the DHS before the same district court judge that was supervising Joshua's settlement. See Matterof Welfare of K.S., 427 N.W.2d 653 (Minn. 1988) [appeal from declaratory judgment determining availability of minor's settlement was properly before supreme court even though not initially brought in same court supervising settlement]. The DHS appeared before the trial court and apprised the court of its position about the focus of the inquiry.
The trial court stated that it would not determine eligibility issues and then ruled that the money was "unavailable." Although the question that Joshua asked the court may not be the precise one that the DHS now prefers, that imperfection does not make a declaratory judgment action inappropriate. Construing the requisites for declaratory relief as urged by the DHS would exalt form over substance. Because NDCC 32-23-12 directs that the declaratory judgment act is to be liberally construed and administered, we decline to give a "crabbed" construction to this request for declaratory relief before the same court that was supervising Joshua's settlement. *Page 200 See Dickinson Public School Dist. v. Sanstead, 425 N.W.2d 906, 912 (N.D. 1988) (Meschke, J., concurring). Cf., Blackburn,Nickels Smith, Inc. v. National Farmers Union Property Casualty Co., 452 N.W.2d 319, 323 (N.D. 1990) [liberal construction of declaratory relief available under NDCC 32-23-06
in order to provide speedy judicial resolution of real disputes over underlying liabilities]. We conclude that Joshua's claim is suitable for declaratory relief.
For appellate review of the relief declared by the trial court, our analysis begins with a description of the system for determining eligibility for welfare under federal and state law. The AFDC program financially assists families with needy children "[f]or the purpose of encouraging the care of dependent children in their own homes." 42 U.S.C.S. §§ 601-615. Under the AFDC program, each state determines the standards for need and the levels of assistance, but the state's plan must conform to federal laws prescribing consideration of "income and resources of any child or relative." 42 U.S.C.S. § 602(a)(7). Federal regulations require the state to consider personal injury awards as income "to the extent it is not earmarked and used for the purpose for which it is paid, i.e., monies for back medical bills resulting from accidents or injury."45 C.F.R. § 233.20(a)(3)(ii)(F). Those regulations also direct that "income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."45 C.F.R. § 233.20(a)(3)(ii)(D). A related state regulation says that, for purposes of AFDC eligibility, a person's need is determined by a budget with "[a]vailable net income and resources . . . collated with basic maintenance requirements [and] [i]f net income and resources exceed maintenance requirements, no need or eligibility exists." NDAC 75-02-01-05(1). Another state regulation lists income to be considered in determining AFDC eligibility, including "[a]ll other income not exempted by law." NDAC 75-02-01-05(8). Additionally, under NDCC 50-24.1-02 and NDAC 75-02-02-18(1), the eligibility standards for medical assistance are similar to the eligibility standards for AFDC.
For purposes of determining the extent of AFDC eligibility, personal injury awards are "income," and not "resources," according to a plurality of the United States Supreme Court inLukhard v. Reed, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987).[1] *Page 201 Lukhard decided a different issue than this case, but the decision recognizes the broad principle that, under the applicable AFDC statutes and regulations, personal injury awards are either income or resources and, therefore, are available for determining the extent of AFDC eligibility.
Likewise, other courts have concluded that a minor's personal injury award or settlement, even when restricted, may be available for determining the extent of welfare eligibility.Matter of Welfare of K.S., 427 N.W.2d 653 (Minn. 1988); Clark v.Pennsylvania Department of Public Welfare, 118 Pa. Commw. 587,546 A.2d 1277 (1988); Robinson v. South Carolina Dept. of SocialServices, 281 S.C. 158, 314 S.E.2d 349 (1984); Arkansas Dept. ofHuman Services v. Donis, 280 Ark. 169, 655 S.W.2d 452 (1983);Langs v. Harder, 165 Conn. 490, 338 A.2d 458 (1973), cert.denied, 416 U.S. 994, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974);Fitzpatrick v. Illinois Department of Public Aid, 52 Ill.2d 218,287 N.E.2d 666 (1972). Those decisions and the regulations on welfare eligibility reflect a basic social policy that welfare recipients must use their own available income and resources before shifting the burden of their support to the taxpayers.
That same social policy has steered our decisions on related subjects. See Bohac v. Graham, 424 N.W.2d 144 (N.D. 1988) [affirming DHS determination that the trust corpus of a general support trust was an available asset for purposes of denying medical assistance benefits]; Penuel v. Penuel, 415 N.W.2d 497
(N.D. 1987) [father's argument that his child support should be reduced because deep pockets of government will bear extra cost of quadriplegic daughter is not principled argument]. We therefore conclude that the DHS may consider the availability of a minor's settlement for personal injuries in determining the extent of welfare eligibility for his mother.
Still, whether a minor's personal-injury settlement is available depends upon when a supervising court should disburse the restricted proceeds. In Dahner v. Daner, 374 N.W.2d 604
(N.D. 1985), we recognized that restricted personal-injury proceeds for minors are usually left intact until the minor reaches the age of majority. However, we went on to say:
 The application of this rule against invasion of the award is restricted by common sense. In situations of emergency, or in situations where no other alternative is reasonably available, disbursement of the award is allowed. But such disbursement is limited to reasonable amounts necessary for the benefit of the child. And once the necessity to invade the award no longer exists, the court must discontinue distribution of the award.
 In effect, the rules relating to disbursement of a personal injury judgment create a two-prong test that the lower court must apply. First, the court must determine whether it is necessary to invade the award. If so, the court may, in its discretion, expend or distribute sums reasonably necessary for the support, education, care, or benefit of the protected person. Because the allocation of funds is related solely to the benefit of the child, the award does not transform into community property.
Dahner, 374 N.W.2d at 606. In Dahner, we remanded to the trial court for a determination on the necessity of invading the minor's settlement. We recognized that it was the parents' primary obligation to support their children, and we emphasized that distribution of a minor's estate must be necessary for support of that minor, though not for other members of his family. We also recognized the interrelationship between a district court's determination on a parent's obligation to support a child and a supervising court's determination to disburse a minor's estate for the same purpose.
A comparable interrelationship exists here. The DHS determines welfare eligibility, including support benefits for children, and a supervising court determines *Page 202 
the necessity for release of a minor's settlement. In determining the necessity of releasing a minor's settlement, the supervising court must decide without regard to the availability of welfare benefits because social policy dedicates welfare benefits to the truly needy.
In this case, the trial court determined that Joshua's settlement was not available for the purposes sought by the DHS. However, the court did not determine if it was necessary to release the settlement for Joshua's support. The latter question is different than the precise question to be answered in an administrative determination of Deborah's eligibility, even though there is an interrelationship. The answer to the question about necessity will remove uncertainty from this controversy and is therefore appropriate for declaratory relief.
The trial court failed to determine whether use of the settlement proceeds was necessary for support for Joshua.[2]
Therefore, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.
[1] Both income and resources are used for computing AFDC eligibility. However, as the Supreme Court explained, the categorization as "income" or "resources" affects the length of time for which a person is ineligible for AFDC:
 Because income eligibility and resource eligibility are separately computed (and also because state limits for the two generally differ), whether and for how long a family that acquires a sum of money is rendered ineligible for AFDC benefits may depend on whether the sum is classified as income or as a resource. Prior to 1981, however, the importance of the classification was minimized by an HHS requirement that States treat any income received in a given month as a resource in following months. Thus, a family that received an amount of income that exceeded the State's income limit would be automatically ineligible for one month; whether or not it remained ineligible in subsequent months would depend on whether the amount of that income that had not yet been spent, combined with the value of the family's other resources, exceeded the State's resource limit. The Secretary of HHS became concerned that AFDC recipients who acquired a large amount of income had an incentive to spend it as rapidly as possible, in order to regain eligibility by reducing their resources to a level beneath the State's resource limit. To solve this problem, the Secretary proposed and Congress passed an amendment to the AFDC statute. Under that amendment, AFDC recipients who receive an amount of income that exceeds the State's standard of need are rendered ineligible for as many months as that income would last if the recipients spent an amount equal to the State's standard of need each month. Section 2304 of the Omnibus Budget Reconciliation Act of 1981 (OBRA), 95 Stat. 845, as amended, 42 U.S.C. § 602(a)(17) (1982 ed., Supp. III).
 Because the OBRA amendment applies by its terms only to income, the distinction between income and resources took on new importance. If a given sum of money were treated as a resource, the family that received the sum would be ineligible only until it spent enough of the sum to bring its resources down to the State's resource limit; but if the sum were treated as income, no matter how much was spent, the family would remain ineligible for the statutory period.
Lukhard, 481 U.S. at 371-372, 107 S.Ct. at 1810.
[2] Relying upon evidence that he has one leg that is three inches shorter than the other and that he may need operations and a prosthesis, Joshua argues that the existence of a medical necessity justifies the trial court's preservation of the settlement for those potential medical expenses. Joshua cites our approving quotation in Dahner, ". . . In the last analysis these funds are for the hurt and injury sustained by the infant." 374 N.W.2d at 605. However, the trial court did not make any findings about whether use of the settlement proceeds is more necessary for Joshua's physical rehabilitation. SeeLangs v. Harder, 338 A.2d at 462 ["Furthermore, there is no evidence whatsoever that any of the funds in question are needed to make the plaintiff's minor son whole in any realistic sense, i.e., for special surgery, skin grafts, artificial limbs or similar remedial expenses."]. But see Matter of Welfare ofK.S., 427 N.W.2d at 659-660 ["We decline . . . to adopt the position that a case-by-case analysis is necessary and conclude instead that a minor's settlement fund is always an available asset for medical assistance eligibility purposes."]. This question remains open for the trial court to decide on remand.