Martin E. O'CONNOR, John Stockman, John Stockman d/b/a Stockman Investments, and Daniel St. Onge, Plaintiffs and Appellants,

v.

NORTHERN STATES POWER COMPA-NY, a Minnesota Corporation, Defendant and Appellee.

Civ. No. 9932.

Supreme Court of North Dakota.

July 9, 1981.

Myer Shark, Fargo, for plaintiffs and appellants.

R. W. Wheeler of Wheeler, Wolf, Peterson & McDonald, Bismarck, for defendant and appellee; Gene R. Sommers, Minneapolis, Minn., of counsel.

VANDE WALLE, Justice.

Plaintiffs appealed from a judgment entered by the district court of Cass County dismissing their complaint for damages against Northern States Power Company (hereinafter "NSP"). We affirm the judgment of the district court.

NSP on July 23, 1976, filed an application for an increase in electrical rates affecting plaintiffs and other ratepayers in North Dakota. Pursuant to Section 49–05–06, N.D.C.C.,[1] the Public Service Commission (hereinafter "PSC") suspended the rate increase pending hearing on the application. On April 26, 1977, the PSC issued its findings of fact, conclusions of law, and order allowing a rate increase less than that requested by NSP in its July 23, 1976, application. The order of the PSC provided, in

---

1. Section 49–05–06, N.D.C.C., provides, in part:

"Whenever a notice or any schedule stating an individual or joint rate, . . . resulting in an increase or decrease in any rate, shall be filed with the commission, the commission may suspend by motion such rate, . . . but the period of suspension thereof shall not extend more than . . . eleven months beyond the time when it otherwise would go into effect. Upon complaint or upon its own initiative without complaint the commission may order a hearing, upon due notice, concerning the propriety of such rate, . . . On such hearing, the commission shall establish the rates, . . . proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable. . . . All such rates, . . . not so suspended, on the expiration of thirty days from the time of filing the same with the commission, or of such lesser time as the commission may grant, shall go into effect and be the established and effective rates, . . . subject to the power of the commission, after a hearing had on its own motion or upon complaint, to alter or modify the same."

part, that "Northern States Power Company file with this Commission for its consideration and approval, tariffs covering electric service in the State of North Dakota consistent with the Findings of Fact and Conclusions of Law on file herein. Said tariffs shall not become effective until approved."

Plaintiffs did not participate in the proceedings leading to the April 26, 1977, order nor did the plaintiffs attempt to appeal from such order.

Rather than file a rate application as directed by the April 26, 1977, PSC order, NSP on May 12, 1977, filed a new application for an increase in rates. The PSC did not, as it did with the July 23, 1976, application, suspend the rates applied for on May 12, 1977,[2] and they became effective on June 11, 1977, and NSP was so notified by the PSC on June 16, 1977, at which time NSP charged for electricity at the increased rate. The PSC did, however, receive complaints from ratepayers for allowing an automatic rate increase without a hearing and the PSC, on its own motion on July 13, 1977, set the matter for hearing. On July 17, 1977, the PSC determined that the rates would not be suspended pending the hearing. Plaintiffs' attorney, on August 5, 1977, moved to roll back the rates but that motion was denied by the PSC on April 28, 1978. A motion for rehearing of that determination was denied but no appeal was taken by these plaintiffs, although other ratepayers not parties to this action did file an appeal pursuant to Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act.[3] On July 24, 1978, the PSC, after hearings, determined the new rates to be reasonable.

Plaintiffs commenced suit alleging that NSP was required under the April 26, 1977, order of the PSC to file a rate application in accordance with the findings and conclusions of the PSC, rather than to file a new application for higher rates, and that NSP's failure to do so makes it subject to damages under the provisions of Section 49–05–10, N.D.C.C. That section provides, in part:

"In case any public utility shall ... omit to do any act, matter, or thing required to be done, either by the constitution, any law of this state, or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court shall find that the ... omission was willful, the court, in addition to the actual damages, shall award damages for the sake of example and by way of punishment. An action to recover for such loss, damages, or injury may be brought in any court of competent jurisdiction by any corporation or person. No recovery under this section in any manner shall affect a recovery by the state of the penalties provided in this title or the power to punish for contempt."

NSP moved for summary judgment, which was granted by the trial court, and this appeal ensued.

Plaintiffs' first allegation of error is that the trial court's denial of their motion for continuance of hearing on NSP's motion for dismissal or summary judgment was an abuse of discretion which was sufficiently prejudicial to require reversal and remand

**2.** See footnote 1 herein. In addition, Section 49–05–05, N.D.C.C., provides, in part, that no change in rates shall be made except after 30 days' notice to the PSC except that the PSC for a good cause shown, may allow changes upon less than the 30 days' notice required "either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

**3.** The other parties appealed the actions of the PSC to the district court of Grand Forks County. The documents attached to the affidavits submitted to the trial court with the motion for

summary judgment in this case indicate that one of the contested matters on that appeal was whether or not the PSC intended that NSP file the rates specified by its April 26, 1977, order before NSP could file a new and higher rate schedule. The matter was remanded to the PSC by the district court of Grand Forks County to consider that issue and the PSC, after remand, determined that NSP was not required to file a rate schedule in accordance with the April 26, 1977, order before filing a new and higher rate schedule.

by this court. Plaintiffs had filed a petition to certify the action as a class action. Subsequent to the notice of that petition, but prior to the date set for hearing thereon, NSP filed a motion to dismiss or in the alternative a motion for summary judgment with a date of hearing set prior to the date set for the hearing on the petition to certify the class action. Plaintiffs moved to continue the hearing on NSP's motion for dismissal or summary judgment because they needed a reasonable opportunity to prepare for a hearing on such a motion. The transcript of the hearing before the trial court reveals the following statement by the trial judge:

"I also indicated over the phone to Mr. Shark that the case would be heard today on the motion to dismiss, but subject to the right of the Court within its discretion to continue the hearing if good cause is shown to this Court."

At the end of the hearing the transcript indicates the trial judge gave his preliminary position on the matter of the summary-judgment motion and then indicated to the parties that he would recess the hearing, give the parties time to file additional documents with the court, and then set a date for a "rehearing" on the matter. The parties were given the opportunity to file and did file additional documents with the trial court. Following the submission of those documents the trial court, without additional hearing, made its decision.

 Although there are indications in a portion of the transcript of the hearing that the trial court would permit additional oral argument, there are also indications that such additional oral argument would be at the discretion of the trial court. Plaintiffs' counsel was served with notice of the motion for summary judgment in compliance with the time requirement of Rule 56(c) and Rule 6(e), N.D.R.Civ.P. Any additional time allowed to the plaintiffs' attorney for the hearing would be within the discretion of the trial court. The trial court permitted the parties to file additional documents. The hearing on the motion was held on August 7, 1980, and the trial court's decision was not issued until November 20, 1980. Following the decision plaintiff's attorney moved for reconsideration of that decision and another hearing was held on that motion on December 23, 1980, at which hearing plaintiffs' counsel appeared and argued the matter again before the trial court.[4] We believe the trial court gave plaintiffs ample opportunity to present their case. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Dobervich v. Central Cass Public School Dist.*, 302 N.W.2d 745 (N.D.1981). There is nothing in the record before us to indicate that the trial court acted in such manner. To the contrary, it appears that the trial court gave counsel for both parties ample opportunity to present their arguments to the court.

Plaintiffs raise a second procedural issue. They argue that their motion to certify the action as a class action should have been heard and determined by the trial court prior to the hearing and determination of NSP's motion for summary judgment because all the prospective plaintiff members of the class should have an opportunity to be heard as to the merits of the action. In support of their position plaintiffs refer us to *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), as authority for a conclusion that a court may not consider a motion to dismiss or a motion for summary judgment while a motion to certify as a class action is pending. A review of that case does not leave us with that impression. At issue in *Eisen* was a preliminary hearing on the merits for the purpose of allocating costs of notice to potential parties in the class-action proceeding. There was no motion for summary judgment involved such as we have here. In indicating that a preliminary hearing on the merits for the purpose of allocating costs of notice in the class action was improper, the court stated:

---

4. Counsel for NSP chose not to appear at the hearing on the motion for reconsideration.

"[A] preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity, it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant." 417 U.S. at 178, 94 S.Ct. at 2153, 40 L.Ed.2d at 749.

It is apparent that in holding that a preliminary determination of the merits was not proper in deciding whether or not to certify an action as a class action, the United States Supreme Court was not concerned with a motion for summary judgment. The Federal Rules of Civil Procedure as well as the North Dakota Rules of Civil Procedure provide for summary-judgment proceedings and the "traditional rules and procedures applicable to civil trials" of which the United States Supreme Court wrote could not have included the summary-judgment procedure, which its own rules permitted.

Plaintiffs also refer us to the decision in *Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100 (D.Va.1980). In that case the Federal District Court, in determining to certify an action as a class action, stated:

"Defendant's motion to dismiss requires an inquiry into the merits of the proposed class action; an inquiry which could potentially reduce the size of the class to more manageable numbers. As inviting as such a determination might be, the Court has no authority to conduct a preliminary inquiry into the merits of this suit *in order to determine whether it may proceed as a class action.*" 85 F.R.D. at 104. [Emphasis supplied.]

The *Eisen* decision is cited as support for the court's statement. Again, it is apparent that the motion to dismiss was filed and considered as part of the motion to certify as a class action, not, as here, a proceeding separate and apart from the consideration of class-action status.

 We find nothing in Rule 23, N.D. R.Civ.P., our class-action rule, nor in case law which prohibits a court from considering a motion for summary judgment whenever a motion to certify as a class action is pending. Although there is, as we have discussed, case law holding that a preliminary determination of the merits is not proper in determining whether or not to certify a class action, we do not construe those decisions as prohibiting consideration of a motion for summary judgment whenever a motion to certify as a class action is pending. The trial court's decision to hear and determine the motion for summary judgment prior to hearing and determining the motion to certify as a class action is not reversible error.

 Plaintiffs' substantive issue is that the trial court was in error in granting summary judgment for NSP. It is plaintiffs' position that by failing to file a schedule of rates as specified in the PSC's order of April 26, 1977, NSP was in violation of a PSC order for which plaintiffs are entitled to recover personal damages pursuant to Section 49–05–10, N.D.C.C. Plaintiffs urge that we reverse the summary judgment because there are genuine issues of fact involved. If there are genuine issues of material fact involved, summary judgment is not proper. See, e. g., *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981). There are no significant issues of fact involved in this case and we view the issue as one of law rather than of fact. The issue of law, simply put, is: Was NSP required to file a schedule of rates in accordance with the PSC order of April 26, 1977, or did the applicable statutes permit NSP to file a new and higher schedule of rates in lieu thereof? A review of the applicable statutory provisions convinces us that NSP was, under the current statutory scheme involving electric utility rates, permitted to file a new and higher schedule of rates rather than file a schedule of rates as specified in the PSC's order of April 26, 1977. In the discussion of the facts of this case we have outlined the statutory procedures involved in establishing electric utility rates. Those statutes provide that no change in rates may be made by any public utility except after 30 days' notice to the PSC [Section

49–05–05, N.D.C.C.]; that whenever a notice or schedule increasing or decreasing any rate is filed with the PSC, the PSC may suspend such rate pending a hearing before the PSC; but that any rate not so suspended, on the expiration of 30 days from the time of filing with the PSC, shall go into effect and be the established and effective rate [Section 49–05–06, N.D.C.C.]. We find nothing in the statutes which prohibits a public utility from filing an increased rate with the PSC rather than filing a lower rate as permitted by the PSC after a hearing.

The PSC issued the order of April 26, 1977. It was the same body that did not suspend the new rate increase filed approximately two weeks later, on May 12, 1977. Under the statutes which it administers the PSC was aware that by failing to suspend the rate filed on May 12, 1977, it would become effective 30 days later and that such rate was a higher rate than that authorized by its April 26, 1977, order. Had the PSC determined that NSP could not file such a new rate until it had complied with the April 26, 1977, order, there can be no doubt that it would have suspended the new rate as provided by statute. The PSC did not nor was it required by statute to take such action and, under the statutory scheme governing rate increases, NSP was authorized to begin charging its new rate on June 11, 1977. Because NSP was permitted by the statutory scheme to begin charging new rates 30 days after the May 12, 1977, filing, it did not "omit to do any act, matter, or thing required to be done, . . . " for which it would be liable to the plaintiffs "for all loss, damages, or injury caused thereby or resulting therefrom" under the provisions of Section 49–05–10, N.D.C.C.[5]

Our construction is supported by reference to Sections 49–04–16 and 49–05–11, N.D.C.C., which, in essence, provide that a public utility must obey and comply with each requirement of every order of the PSC and that every such order shall continue in force until revoked or modified by the PSC. These statutes were construed in *State v. Montana-Dakota Utilities Co.*, 89 N.W.2d 94 (N.D.1958), wherein this court discussed the legislative history of what are now Sections 49–05–05, 49–05–06, and 49–05–11, N.D.C.C. The PSC in that case urged that Section 49–05–05 was not applicable where the rates filed exceeded those named in an outstanding unrevoked order of the PSC because of the provisions of Section 49–05–11, N.D.C.C. The court, after discussing the legislative history of what are now Sections 49–05–05, 49–05–06, and 49–05–11, and the statutory scheme of public utility rates in North Dakota, concluded that because Sections 49–05–05 and 49–05–06 were of later enactment than Section 49–05–11, they "to the extent of the matters particularly covered by the amendment . . . superseded and repealed that older and more general statute." 89 N.W.2d at 99. The opinion makes it clear that the PSC may suspend a new rate filed by a public utility but not for more than the time specified in Section 49–05–06, and, at the end of that time if the PSC has issued no order the filed rate becomes effective notwithstanding the provisions of Section 49–05–11. Because of the court's holding that Sections 49–05–05 and 49–05–06 supersede the provisions of Section 49–05–11 insofar as they may be inconsistent, it is also clear from the court's opinion that if the PSC takes no action to

---

5. Plaintiffs urge that the effect of the PSC's approving a lower rate than requested on April 26, 1977, and then permitting a higher rate than that approved to become effective June 11, 1977, is confusing to the ratepayers. That argument is not implausible. However, the confusion is permitted by our statutory scheme and the action or inaction of the PSC and the remedies, if they are to be sought, rest with the Legislature and the PSC.

 NSP urges that if it had taken action to immediately file the higher rate permitted by the April 26, 1977, order, and then file the even higher rate on May 12, 1977, rather than simply letting the older and lower pre-1977 rates apply until the May 12, 1977, rate became effective in June, the plaintiffs and other ratepayers would, in effect, have been paying increased rates for a period of some weeks. They argue that the plaintiffs therefore were not damaged and cannot complain about the procedures used. Although this argument seems plausible it does not form the basis for our decision.

**371**

suspend the rate it becomes effective 30 days after filing:

"Thus it appears that a rate becomes effective on the expiration of 30 days from the time of filing or such lesser time as the Commission may grant unless a hearing on notice is ordered, in which event the proposed rate is suspended pending the hearing and decision of the Commission . . ." 89 N.W.2d at 101.

Here, the PSC took no action to suspend the rates during the 30-day period following the May 12, 1977, filing by NSP. The lack of any PSC order suspending the rates filed by NSP on May 12, 1977, permitted the rates to become effective on June 11, 1977.

 Plaintiffs were not involved in any of the proceedings concerning this matter before the PSC. Because they were not participants they could take no appeal under the Administrative Agencies Practice Act. Sec. 28–32–15, N.D.C.C.; *Application of Bank of Rhame,* 231 N.W.2d 801 (N.D. 1975). They argue that although they had no right of appeal, Section 49–05–10, N.D. C.C., gives them the right to contest the actions of NSP in this instance.

In support of their position plaintiffs refer us to Section 2106 of the California Public Utilities Code and the decisions of the California courts construing this provision. Section 2106 is, for our purposes, nearly identical to Section 49–05–10, N.D. C.C. Plaintiffs urge that under the interpretation of the California provision by the California courts NSP would be subject to paying damages for failure to file the rate prescribed in the April 26, 1977, order of the PSC. An examination of the authorities cited by plaintiffs does not support their contention. In *Waters v. Pacific Telephone Company,* 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161 (1974), the Supreme Court of California held that despite the provisions of Section 2106 of its Public Utilities Code, an action against a telephone company for alleged failure to furnish adequate telephone service was barred by Section 1759 of that same code, depriving California's superior courts of jurisdiction over the Public Utilities Commission's performance of its duties where the Commission had approved the telephone company's use of a tariff provision limiting its liability for ordinary negligence to a credit allowance.

Plaintiffs place reliance upon the *dissenting* opinion in *Waters, supra,* but the dissenting opinion does not reflect the law as expressed in the majority opinion of the California Supreme Court. Plaintiffs also cite *Vila v. Tahoe Southside Water Utility,* 233 Cal.App.2d 469, 43 Cal.Rptr. 654 (1965), but that case, considered in the majority opinion in *Waters,* simply indicates that the California superior court had jurisdiction to determine whether or not a public utility had acted wrongfully and, if so, to award damages. The decision notes that the California Public Utilities Commission has authority to enforce its own orders and regulations but does not have authority to award damages to persons injured as a result of a violation of such orders or regulations by a public utility; the California court indicated that is the reason for the procedure under Section 2106 of the California Public Utilities Code. That same situation exists in North Dakota. The California cases do not hold that a person is entitled to damages where there has been no violation of the Constitution, any law of the State, or any order or decision of its Commission.

As the trial court noted in its order granting summary judgment to NSP:

"The motion to dismiss of NSP is therefore entirely dependent on the answer to this sole question: Did NSP do an unlawful act or omit to do a required act when it did not file a schedule of tariff rates when ordered to do so by PSC on April 26, 1977? This Court finds as a matter of law that NSP did not violate any law, constitutional requirement or order of PSC as defined in that statute. In the absence of such unlawful act or unlawful omission, the Complaint of the Plaintiffs must fail."

We agree. The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and SAND, JJ., concur.