Doug **CARLSON, Honorable Sheriff of the County of Dunn, Brent J. Woodworth, Special Deputy Sheriff, Dunn County, North Dakota, and Renee C. Tysver, Special Deputy, Dunn County, North Dakota, Plaintiffs, Appellees, and Cross-Appellants,**

v.

**DUNN COUNTY, a North Dakota Municipal Corporation and Albert Sickler, Chairman, Dunn County Commissioner; Leonard Steckler, Dunn County Commissioner; George Ferebee, Dunn County Commissioner; and Reinhard Hauck, Dunn County Auditor, Defendants, Appellants, and Cross-Appellees.**

Civ. No. 11,407.

Supreme Court of North Dakota.

June 30, 1987.

---

Hagen, Quast & Alexander, Beulah, for plaintiffs, appellees, and cross-appellants; argued by Larry W. Quast.

Joseph H. Kubik, States Atty., Dickinson, for defendants, appellants, and cross-appellees.

MESCHKE, Justice.

Dunn County, the members of its Board of Commissioners, Albert Sickler, Leonard Steckler, George Ferebee, and its Auditor, Reinhard Hauck (hereinafter collectively referred to as the Board) have appealed from a district court judgment ordering (1) the Board pay claims for compensation of sheriff's special deputies, Renee C. Tysver for $224.25 and Brent J. Woodworth for $39.00; (2) a claim by Sheriff Doug Carlson be remanded to the Board for reconsideration; and (3) the Board pay $450 for Carlson, Woodworth, and Tysver's attorney fees and costs. Carlson, Woodworth, and Tysver have cross-appealed from the remand of Carlson's claim and have requested attorney fees on appeal. We affirm, award attorney fees, and remand with directions.

At a meeting on July 1, 1986, the Board rejected claim vouchers presented by Carlson, Woodworth, and Tysver:

"The Board began the audit of bills. Commissioner Steckler moved and Commissioner Ferebee seconded the motion that the following bills be rejected because of a motion passed on May 7, 1985, stating the Sheriff can have only the equivalent of five full tim [sic] people, The Sheriff, three full time deputies, and a dispatcher and a motion passed on July 2, 1985 stating that the county will no longer allow the Sheriff's Department special deputies and if hired the Board will no longer allow payment for those deputies: Renee C. Tysver $224.25 for

Clerical work, Prisoner Transport, and Courtroom Security, Brent J. Woodworth, $39.00 for Court Security, Doug Carlson, $38.44 for meals for witnesses and court security. The motion carried."

Carlson, Woodworth, and Tysver appealed to the district court. The district court recognized that the Board was authorized to fix the number and salaries of the sheriff's deputies under § 11–10–11, N.D.C.C.,[1] as it did in its resolution of May 7, 1985. The court noted that the Board's resolution of July 2, 1985, that the "Sheriff's Department 'would not be allowed special deputies and further that the Board would not allow payment for such deputies'" was adopted "apparently without reference to any legal authority, possibly without legal advice." The court ruled that § 11–15–02, N.D.C.C.,[2] "clearly implies that the Commissioners must budget some reasonable amount for special deputies to be appointed by the Sheriff." The court found that there were sufficient other funds within the sheriff's budget and ordered that the claims of special deputies Woodworth and Tysver be paid from those other funds.[3] The trial court, concluding that "the record ... is uncertain" whether Sheriff Carlson's claim should have been paid, remanded that item to the Board for reconsideration "pursuant to the applicable law and any applicable ordinances, resolutions or administrative policies adopted by the Dunn County Commissioners." Pursuant to § 11–11–39, N.D.C.C.,[4] the court awarded costs and attorney fees of $450.

■ On appeal, the Board asserts that the trial court erred in determining that § 11–15–02, N.D.C.C., implies that the Board must budget a reasonable amount for special deputies to be appointed by the sheriff.

Historically, sheriffs have been granted wide latitude in the appointment of deputies. Section 371, R.C. 1895, provided that "[t]he sheriff may appoint such number of deputies as he may deem necessary." Section 11–10–11, N.D.C.C., allows county commissioners to fix the number and salaries of regular deputies. Section 11–15–02, N.D.C.C., however, deals specifically with special deputies. As originally adopted (S.L.1911, ch. 275, § 5), what is now codified as § 11–15–02 provided that "[i]n case of any emergency the sheriff shall have the authority to appoint and qualify special deputies in such numbers as in his judgment the conditions may require." In 1983, the requirement of an "emergency" was deleted and the phrase "within the limits of funds budgeted for such purpose" was inserted. S.L.1983, ch. 151, § 1.

1. *"11–10–11. Appointment and salary of deputies and clerks.* The number and salaries of deputies, clerks, and assistants for the county ... sheriff, ... shall be fixed by a resolution of the board of county commissioners...."

2. *"11–15–02. Sheriff may appoint special deputies—Compensation.* The sheriff may appoint and qualify special deputies in such numbers as are required by the conditions. Each special deputy shall receive compensation for services rendered and the same mileage allowance as regular deputies, which must be paid by the county within the limits of funds budgeted for such purpose. The sheriff shall have the sole power of appointing special deputies and may remove them at pleasure."

3. Section 11–23–07, N.D.C.C., provides for transfers of funds to meet expenditures required by law:

"*11–23–07. Transfer of money from other funds.* If the appropriation for any purpose is not sufficient to meet the expenditures required by law, the county auditor, on the order of the board of county commissioners, may make a transfer to the required fund from any other fund, except from sinking and interest funds set aside to pay the principal or interest on outstanding bond issues, or from funds set aside to retire any other outstanding indebtedness, or from funds received from the state for road, bridge, and highway purposes. The board shall place on its records a statement of all of such transfers with the reasons therefor in detail, and shall report fully and specifically thereon in the published statements of its proceedings."

4. *"11–11–39. Appeal from decision of board by aggrieved person—Bond—Costs and fees payable.* An appeal may be taken to the district court from any decision of the board of county commissioners by any aggrieved person.... The district court may at its discretion award costs and reasonable attorney fees to appellants when three or more aggrieved persons have joined in an appeal from a decision of the board of county commissioners and the court rules in favor of the appellants."

Thus, § 11–15–02, N.D.C.C., is calculated to give sheriffs some latitude in appointing special deputies when necessary, while also giving county commissioners some measure of fiscal control.

There has been no assertion that the services of the special deputies were not "required by the conditions." Presumably, therefore, their services were required, the sheriff was justified in appointing them, and payment for their services "is a proper expenditure to be defrayed out of the [county] treasury." *See State ex rel. Byrne v. Baker*, 65 N.D. 190, 262 N.W. 183, 184 (1934), where this court held that an expenditure for constitutionally required publicity pamphlets incident to an election was authorized by law even without an appropriation:

"The provisions of the Constitution involved here are mandatory. North Dakota Constitution, §§ 21, 25. The constitutional provision quoted above enjoins upon the secretary of state a specific duty.... It is apparent that the secretary of state cannot perform the duty enjoined upon him by the provisions of the Constitution without incurring the expense incident to the publication and mailing of the publicity pamphlet. If the Legislative Assembly could prevent the secretary of state from performing this duty by failing or refusing to appropriate funds for the prescribed constitutional purpose, it could, in effect, nullify the constitutional mandate. We are of the opinion that ... the cost incident to the publication and distribution of the publicity pamphlet is a proper expenditure to be defrayed out of the state treasury, ..., even though the Legislative Assembly has made no specific appropriation for the purpose."

Like reasoning can apply to statutes defining the organization of county government and the relationship of a county commission to the county sheriff.

The Board may be authorized by § 11–15–02, N.D.C.C., to limit the sheriff's budget for special deputies for a good reason. In this case, however, the record contains no reason for the Board's blanket refusal to allow the sheriff to appoint special deputies. We are not persuaded that the district court erred in ordering the Board to pay the claims of special deputies Woodworth and Tysver.

■ Carlson contends that the district court erred in not ordering the Board to pay his claim. Carlson's voucher was for meals purchased for witnesses and special deputies, which is a different kind of expense than salaries of special deputies. Thus, different considerations may come into play. In remanding this item to the Board for reconsideration, the court noted that the parties did not brief "the question of whether the Sheriff may validly seek reimbursement for meals he voluntarily purchases for other persons and the Court is not aware of what policies Dunn County may have established in the past in regard to such claims for reimbursement." We conclude that the district court did not err in remanding Carlson's claim for reconsideration.

■ Having ruled in favor of Carlson, Woodworth, and Tysver in their appeal from the Board's decision, the district court ordered the Board to pay $450 for costs and attorney fees pursuant to § 11–11–39, N.D.C.C. The Board has not asserted that the award was not reasonable and it is, therefore, affirmed.

■ Carlson, Woodworth, and Tysver request that the Board be ordered to pay their attorney fees of $1,500 on this appeal. Recently, in awarding attorney fees on appeal in *Troutman v. Pierce, Inc.*, 402 N.W.2d 920, 925 (N.D.1987), we said:

"We do not believe that a prevailing consumer's attorney-fee award under the Magnusson-Moss Act at the trial level should be dissipated by uncompensated costs, expenses and attorney fees in successfully defending a judgment on appeal."

We similarly believe that an attorney fee award under § 11–11–39, N.D.C.C., should not be dissipated by uncompensated attorney fees incurred in successfully defending a judgment on appeal.

In awarding attorney fees on appeal, we would ordinarily, as we did in *Troutman, supra,* remand the matter to the trial court for a determination of the amount of attorney fees to be allowed for the appeal. In this case, however, by failing to file a reply brief or otherwise respond to the request for attorney fees on appeal, the Board has not contested the $1,500 request for attorney fees. We, therefore, award $1,500 for attorney fees, as requested.

The judgment is affirmed and attorney fees on appeal are awarded in the amount of $1,500. On remand, the district court is directed to modify the judgment to order the Board to pay attorney fees of $1,500 on appeal.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, Justice, concurring in the result.

I concur in the result. I write specially to note it is my understanding we are not departing from the usual rule that the parties each pay their respective attorney fees on appeal. Absent a frivolous appeal or a failure to comply with the appellate rules [see Rule 38, N.D.R.App.P.], there is no authority in our statutes ·or rules for a general award of attorney fees to the successful party on appeal. Because Section 11–11–39, N.D.C.C., provided for attorney fees at the trial court level, thus altering the ordinary rule for this particular type of legal action, I agree we are, to carry out the intent of the statute, justified in protecting the award of attorney fees at the trial court level by also awarding attorney fees for successfully defending the appeal. The same rationale applied in *Troutman v. Pierce, Inc.,* 402 N.W.2d 920 (N.D.1987), upon which the majority opinion here relies, wherein a Federal statute provided for attorney fees for successful prosecution of an action under the Magnusson-Moss Act. Absent such specific similar statutes [see, e.g., Section 14–05–23, N.D.C.C.], providing for award of attorney fees at the trial level

or on appeal, it is my understanding we remain without authority to award attorney fees for successfully defending an appeal although the fees for defending the appeal have the practical effect of reducing the judgment awarded by the trial court.

LEVINE, Justice, concurring and dissenting.

I concur in the rationale and result affirming the judgment below. I also concur in the rationale for awarding attorney fees on appeal. I dissent, however, from the amount awarded as well as from the general proposition that the trial court ordinarily determines the amount of attorney fees to be allowed for an appeal.

I understand that this Court has customarily followed the procedure of remanding to the trial court the determination of attorney fees on appeal. That custom should be abandoned.

The Wyoming Supreme Court is on the mark and its expression warrants our adherence:

" 'There is good reason for the supreme court rather than the district court to pass upon the need for ordering payment of an attorney's fee in an appeal, and the supreme court is in a better position to say what, under the circumstances, is a reasonable and proper fee for legal service in that court.' ... [T]o award appellate fees here avoids the circuitous action of sending the case back to the district court for a determination of a proper appellate fee, and then reviewing the fee awarded if that determination is appealed." *DeWitt v. Balben,* 718 P.2d 854, 866 (Wyo.1986) (quoting in part *Rubeling v. Rubeling,* 406 P.2d 283, 285–286 (Wyo. 1965)).

We are simply in a better position than the trial court to determine the amount of reasonable attorney fees on appeal.

However, absent documentation of attorney fees, we should award a token amount only. Cf. *United Bank of Bismarck v. Young,* 401 N.W.2d 517, 519 n. 1 (N.D.

1987). Carlson submitted no proof. One who requests attorney fees on appeal should provide sufficient documentation to justify the request. I do not agree that the Board's failure to object by reply brief entitles Carlson to the amount requested. I suspect that had Carlson requested $15,000.00 in attorney fees, the majority would have required some proof. I also suspect that the $1,500.00 awarded by the majority is viewed as a "token" amount. If so, it is too rich for my blood. I would award $500.00. I therefore respectfully dissent from the award of $1,500.00 attorney fees.