AGGIE INVESTMENTS GP, Intervenor, Appellee and Cross–Appellant

v.

PUBLIC SERVICE COMMISSION OF NORTH DAKOTA, Respondent, Appellant and Cross–Appellee

and

Northern States Power Company, Respondent.

AGGIE INVESTMENTS GP, Intervenor, Appellee and Cross–Appellant

v.

PUBLIC SERVICE COMMISSION OF NORTH DAKOTA, Respondent

and

Northern States Power Company, Respondent, Appellant and Cross–Appellee.

Civ. Nos. 900319, 900327.

Supreme Court of North Dakota.

May 28, 1991.

Myer R. Shark (argued), and Ralph Maxwell (no appearance), of Maxwell Law Office, Fargo, for intervenor, appellee and cross-appellant.

Illona A. Jeffcoat–Sacco (argued), Asst. Atty. Gen., and William W. Binek (no appearance), Asst. Atty. Gen., Public Service Comm'n, Bismarck, for respondent, appellant and cross-appellee Public Service Comm'n of North Dakota.

Daniel S. Kuntz (argued), of Zuger, Kirmis, Bolinske & Smith, Bismarck, and

David Lawrence (no appearance), Legal Dept., Northern States Power Co., Minneapolis, for respondent, appellant and cross-appellee Northern States Power Co.

LEVINE, Justice.

Northern States Power Company [NSP] appeals from a district court judgment reversing an order by the North Dakota Public Service Commission [PSC] accepting an electric rate settlement offer submitted by NSP. Aggie Investment GP [Aggie] cross-appeals from that part of the judgment affirming the PSC's refusal to order NSP to issue a refund to reflect a reduction in NSP's income tax expenses because of the enactment of the Tax Reform Act of 1986. The PSC appeals from the district court's award of $48,022.86 in attorney's fees to Aggie. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

NSP is an investor-owned utility which provides retail electric service to Minnesota, South Dakota and North Dakota. On July 31, 1987, NSP filed an application with the PSC requesting a $6,075,000 increase in annual revenue for its retail electric rates for North Dakota. On August 4, 1987, the PSC suspended NSP's application for a rate increase pending investigation, formal hearing and issuance of a final order.

The PSC held public input hearings on September 22, 23, and 24, 1987, in Fargo, Grand Forks and Minot, respectively. On October 13, 1987, Aggie moved to intervene and the PSC granted Aggie's motion on October 20, 1987. The PSC held a technical hearing in Bismarck in January 1988.

At the technical hearing, evidence was presented on several methods of jurisdictional allocation of NSP's system-wide demand costs for its North Dakota electric rates. NSP presented evidence that all the jurisdictions served by NSP should use the same jurisdictional allocation method and that an average twelve-monthly coincident peak method (12 CP method) provided the

best allocation of NSP's system-wide demand costs for North Dakota. An expert hired by the PSC testified that the peak and average method (P & A method) more accurately allocated NSP's system-wide demand costs for North Dakota. Aggie argued that the PSC should adopt the single coincident peak method (1 CP method).

On March 24, 1988, the PSC issued findings of fact, conclusions of law and an order denying NSP's application for a rate increase and directing NSP to file rates reflecting a $427,000 reduction in annual revenue. After noting that the Minnesota Public Utility Commission had recently rejected the 12 CP method in Minnesota, the PSC rejected the 12 CP method and adopted the P & A method for allocating NSP's system-wide demand costs for its North Dakota electric rates.

In response to the PSC's March 24, 1988 order, NSP filed rates which were to be effective on May 2, 1988. However, on April 26, 1988, the PSC issued an order to stay those rates pending a rehearing on three issues: (1) the effect of the 1986 Tax Reform Act on NSP's electric rates for the period of July 1, 1987 through May 2, 1988; (2) the choice of methods of jurisdictional allocation; and (3) the effect of jurisdictional allocation on cost of capital.

After a further evidentiary hearing and oral argument on rehearing, NSP requested the PSC to take administrative notice that, in an October 20, 1988 decision, the Minnesota Public Utilities Commission had adopted the 12 CP method for allocating NSP's system-wide demand related costs for its Minnesota electric rates. Aggie resisted that request. On November 15, 1988, the PSC determined that the Minnesota decision was the proper subject of judicial notice under Rule 201(b), N.D.R. Evid. and was therefore subject to administrative notice under Section 28–32–07, N.D. C.C.

NSP submitted an "offer of settlement" [1] on December 5, 1988, which proposed adop-

---

1. The "offer of settlement" provided:
 "It is agreed that, if the Commission approves this Offer of Settlement, the Company will file for Commission approval revised rate

schedules to produce an increase in present jurisdictional rate levels of 2.5% ($1,910,000) on an annual basis exclusive of sales taxes. The revised rate schedules shall be effective

tion of the 12 CP method for North Dakota and authorized NSP to file rates increasing annual revenue by $1,910,000. The PSC staff recommended acceptance of NSP's offer of settlement, noting:

"Staff believes that the evidence still supports the peak and average formula. However, evidence introduced at the rehearing also supports the 12 CP method. The record does not support one method to the exclusion of the other. In addition, both economic experts at the rehearing advocated additional return for inconsistency among allocation methods."

Aggie filed a written objection to the offer of settlement.

On December 13, 1988, without further hearing, the PSC issued an order determining that "NSP's offer represents a just and reasonable resolution of the matter" and that "[t]he 12 [CP] method is supported by evidence on the record." The PSC adopted the 12 CP method, incorporated the offer of settlement into its March 24, 1988 order and directed NSP to file a schedule of rates consistent with the offer of settlement. NSP filed those rates on March 14, 1989, and they became effective April 1, 1989. The PSC order also concluded that Aggie's arguments on the Tax Reform Act of 1986 were not supported by the law or evidence.

Aggie appealed to the district court for Cass County, which dismissed for lack of subject matter jurisdiction. In *Aggie Investments GP v. Public Service Commission*, 451 N.W.2d 141 (N.D.1990), we reversed and remanded, holding that the public input hearing in Fargo constituted a "hearing or part thereof" under Section 28–32–15, N.D.C.C., and therefore the district court for Cass County had jurisdiction to hear Aggie's appeal.

On remand, the district court concluded that Aggie had been denied "fundamental due process" because the PSC failed to make findings of fact sufficient to justify its conclusion that the electric rates set by its March 24, 1988 order should be changed. The court determined that Aggie was "denied a fair hearing on the matter, and the Public Service Commission published an order which, in effect, was an order which changed its previous order, and it happened without the benefit of a hearing on it and findings of fact." The court concluded that the PSC's December 13, 1988 order was a nullity and remanded to the PSC to establish an appropriate method and schedule for refund of excess rates collected pursuant to that order. However, the court affirmed the PSC order on the effect of the Tax Reform Act of 1986 on NSP's rates. The court also awarded Aggie $48,022.86 in attorney's fees pursuant to Section 28–32–21.1, N.D.C.C.

Section 28–32–19, N.D.C.C., governs our review of PSC decisions and provides:

"... the court shall affirm the decision of the agency unless it shall find that any of the following are present:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

for usage on and after April 1, 1989. The present rates will remain in effect until April 1, 1989 and will not be subject to refund.

"The Company agrees that it will not file for a general rate increase for 2 years from the date of the Commission's acceptance of the Settlement Offer. This provision does not apply to such changes in charges to customers as are provided for by the operation of Fuel Clause Rider No. 1 (Sheet No: E 76.2) in the Company's rate filing in this docket. The Company waives any claim that this provision might exceed the statutory authority of the Commission.

"The Offer of Settlement includes the adoption by the Commission of the 12 monthly coincidental peak method for allocating system production and transmission demand related costs to the North Dakota retail electric jurisdiction.

"The Company shall submit for approval as soon as possible a new set of rate schedules designed to produce total revenues equal to the settlement rate level based upon the test year billing determinants. The rates shall be designed as far as possible in the same manner as the rates originally approved by the Commission in its March 24, 1988 order."

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact.

"If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

Relying on *O'Connor v. Northern States Power Co.*, 308 N.W.2d 365 (N.D. 1981), and *Transportation Division of the Fargo Chamber of Commerce v. Sandstrom*, 337 N.W.2d 160 (N.D.1983), NSP argues that the district court erred in reversing the PSC order accepting NSP's offer of settlement. It says the PSC did not "establish" rates when it accepted the offer of settlement. Rather, the rates NSP filed on March 14, 1989, were "automatic" rates which became effective "thirty days from the time of filing ... or of such lesser time as the commission may grant" because they were not suspended by the PSC. Disregarding the offer of settlement and PSC's acceptance of the offer, and characterizing the rates filed on March 14, 1989, as an application for an increase in electric rates which went into effect automatically, NSP argues that under our statutes, the PSC was not required to hold a hearing or make findings of fact for those "automatic" rates.

■ Aggie argues that Section 49–02–02(5), N.D.C.C., required the PSC to hold a hearing before accepting the offer of settlement. We agree.

Section 49–02–02(5), N.D.C.C., says:

"*Powers of public service commission with reference to public utilities.* The commission shall have power to:

\* \* \* \* \* \*

"5. Hold hearings on good cause being shown therefor or on its own motion, and to provide notice thereof and to shorten the period for which notice

shall be given prior to hearing, when good cause exists for such action. Such notice, however, shall be reasonable in view of the nature, scope, and importance of the hearing. *Whenever it shall appear to the satisfaction of the commission that all of the interested parties have agreed concerning the matter at hand, the commission may issue its order without a hearing.*" [Emphasis added.]

The language of Section 49–02–02(5), N.D.C.C., expressly allows the PSC to issue an order without a hearing whenever all the interested parties have agreed on the matter at hand. When there is no agreement, a hearing is required. We agree with Aggie that, before accepting the offer of settlement, the PSC was required to hold a hearing under that statute. The PSC had suspended NSP's original application for a rate increase pending formal proceedings and Aggie had intervened in those proceedings. *See* Section 69–02–02–05, N.D.A.C. [Intervention]. After holding public input and technical hearings, the PSC issued an order directing NSP to file rates reflecting a reduction in annual revenue. The PSC stayed that order pending a rehearing. After an evidentiary rehearing and while the case was under consideration, NSP submitted an offer of settlement and Aggie objected. In spite of Aggie's disagreement, the PSC accepted the offer of settlement without a hearing and NSP filed rates on March 14, 1989, which were identical to those directed by the PSC in its order accepting the offer of settlement. Because Aggie was an interested party [2] and did not agree to the offer of settlement, Section 49–02–02(5), N.D.C.C., required the PSC to hold a hearing before it accepted the offer of settlement.

NSP's reliance upon *O'Connor v. Northern States Power Co.*, 308 N.W.2d 365 (N.D.1981), is misplaced. In *O'Connor*, the PSC suspended NSP's rate application and, after a formal investigation and hearing, issued findings of fact, conclusions of law and an order directing a rate increase less

---

**2.** Section 28–32–01(4), defines "party" as "each person named or admitted as a party, or proper-

ly seeking and entitled as of right to be admitted as a party."

than that requested by NSP. Rather than file the rate directed by the PSC order, NSP filed a new application for an increase in rates. The PSC did not suspend the rates requested in the new application and they thus automatically became effective in thirty days. Section 49–05–06, N.D.C.C. Thereafter, the plaintiffs, who were not participants in any of the proceedings before the PSC, commenced an action for damages against NSP under Section 49–05–10, N.D.C.C.,[3] alleging that NSP was required to file a rate application in accordance with the PSC's order and its failure to do so entitled plaintiffs to damages. The trial court granted summary judgment in favor of NSP. We affirmed, concluding that nothing in the statutory scheme for setting electric utility rates prohibited NSP from filing a new schedule of rates rather than filing the schedule of rates permitted by the PSC after a hearing.

*O'Connor* was an action for damages against a public utility in which the plaintiffs alleged that the public utility failed to comply with a PSC order. *O'Connor* involved neither the PSC's acceptance of an offer of settlement in a pending rate case nor the necessity of an administrative hearing under Section 49–02–02(5), N.D.C.C. In *O'Connor*, we concluded that applicable statutes did not prohibit the public utility from doing what it did. In this case, we conclude that Section 49–02–02(5) does prohibit the PSC from accepting an offer of settlement after the hearings were closed. *O'Connor* therefore is not controlling on the issue of whether a hearing is necessary under Section 49–02–02(5), N.D.C.C., before accepting an offer of settlement.

NSP's reliance on *Transportation Division of the Fargo Chamber of Commerce v. Sandstrom*, 337 N.W.2d 160 (N.D.1983), as authority for its argument that no hearing is necessary in this case, is also misplaced. In *Fargo Chamber of Commerce*, a settlement was reached during the course of the PSC's hearings and investigation.[4] The Fargo Chamber of Commerce was not a party to the proceedings and did not file a complaint with the PSC challenging the rates implemented as a result of the settlement.

We held that because the Fargo Chamber of Commerce failed to file a complaint pursuant to the statutorily mandated administrative procedures for challenging a rate increase, the district court did not err in dismissing the Fargo Chamber's independent action to enjoin the rate increase. The impetus for our holding was the efficacy of the doctrine of exhaustion of administrative remedies which would have been seriously undermined by the Chamber of Commerce's independent action for injunctive relief. We observed that bifurcated administrative and judicial proceedings on the same legal question would create duplication, uncertainty and endless confusion.

---

**3.** Section 49–05–10, N.D.C.C., provides:

"*Improper action taken by utility—Damages—Who may sue—Recovery.*—In case any public utility shall do, cause to be done, or permit to be done, any act, matter, or thing prohibited, forbidden, or declared to be unlawful, or shall omit to do any act, matter, or thing required to be done, either by the constitution, any law of this state, or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court shall find that the act or omission was willful, the court, in addition to the actual damages, shall award damages for the sake of example and by way of punishment. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. No recovery under this section in any manner shall

affect a recovery by the state of the penalties provided in this title or the power to punish for contempt."

**4.** We note that Section 69–02–03–01, N.D.A.C., deals with settlements "at any time prior to or during hearings" before the PSC and provides: "*To adjust or settle proceedings.* In order to provide an opportunity for a settlement of a proceeding, or any of the issues therein, there may be held at any time prior to or during hearings before the commission or an examiner such informal conferences of parties for the admission and consideration of facts, arguments, offers of settlement, or proposals of adjustments as time, the nature of the proceeding, and the public interest may permit. Unaccepted proposals of settlement, adjustment, procedure to be followed, or proposed stipulations not agreed to shall be privileged and not admissible in evidence against any party."

There is no danger of bifurcated administrative and judicial proceedings in this case. The PSC initially suspended NSP's rate application and Aggie thereafter intervened. Aggie filed a written objection to the offer of settlement in the formal administrative investigation making clear its objection to the settlement offer. Section 49–02–02(5), N.D.C.C., was not at issue in *Fargo Chamber* and it does not require a party to the proceedings, such as Aggie, to file a document entitled "complaint," in order to make its objection to the offer of settlement known to the PSC. Although Section 69–02–03–01, N.D.A.C. (*see* fn. 4), authorizes settlements "at any time prior to or during hearings," that rule contemplates a public airing of a settlement during the hearing process and is consistent with the statutory requirement that there be a hearing whenever all the interested parties do not agree on the settlement. In this case, NSP's offer of settlement was made after the evidentiary rehearing was closed. Because Aggie did not agree to the offer of settlement and properly informed the PSC of its disagreement, a hearing was necessary under Section 49–02–02(5), N.D. C.C.

■■■■ But, the PSC did not hold a hearing pursuant to Section 49–02–02(5), N.D. C.C., and its administrative rules for hearings in Ch. 69–02–04, N.D.A.C. The powers and duties of the PSC must be exercised in accordance with the statutory provisions granting those powers. *State ex rel. Public Service Commission v. Northern Pacific Railway Co.*, 75 N.W.2d 129 (N.D.1956); *Petition of Village Board of Wheatland*, 77 N.D. 194, 42 N.W.2d 321 (1950). The PSC's acceptance of the offer of settlement did not follow the statutory requirements of Section 49–02–02(5), N.D. C.C. The PSC's decision cannot be sustained under Section 28–32–19(1) and (3), N.D.C.C., and a remand to the PSC for compliance with Section 49–02–02(5), N.D. C.C., is necessary.[5] Section 28–32–19, N.D. C.C.

■■■ Aggie also asserts that the PSC erred in taking administrative notice that Minnesota had approved the 12 CP method for allocating NSP's demand related costs to Minnesota. Section 28–32–06, N.D.C.C., provides that no evidence except that which is offered and made part of the official record of the hearing shall be considered by an administrative agency except as otherwise provided in Chapter 28–32, N.D.C.C. Section 28–32–07, N.D.C.C., precludes an administrative agency from considering evidence not presented at a formal hearing [*Insurance Services Office v. Knutson*, 283 N.W.2d 395 (N.D.1979) ], but does not preclude an "agency from taking notice of any ... facts which are judicially noticed by the courts of this state."

Rule 201(b), N.D.R.Evid., allows a court to take judicial notice of a fact which is not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Rule 201, N.D.R.Evid., is patterned after the Rule 201, F.R.Evid., and we may look to persuasive federal authority for interpretation of our rules. *E.g., State v. Manke*, 328 N.W.2d 799 (N.D.1982). Under Rule 201, F.R.Evid., administrative agency decisions are the proper subject of judicial notice. *United States v. An Undetermined Quantity*, 583 F.2d 942 (7th Cir. 1978); 10 Moore's Federal Practice § 201.02[1]. Minnesota's adoption of the 12 CP method was the proper subject of judicial notice under Rule 201(b), N.D.R. Evid. Under Sections 28–32–06 and 28–32–07, N.D.C.C., the PSC was not precluded

---

**5.** Aggie also contends that the PSC failed to make adequate findings of fact and a timely decision in violation of Section 28–32–13, N.D. C.C. Because of our resolution of this case, we need not consider the adequacy of any findings of fact or conclusions of law by the PSC in its December 13, 1988 order accepting the offer of settlement. We also note that section 28–32–13,

N.D.C.C., requires a decision by an administrative agency within thirty days after evidence has been received, briefs filed, and arguments closed in a proceeding, or as soon thereafter as possible. That statute allows an administrative agency relief from the thirty-day time constraints for rendering a decision.

from taking administrative notice that the Minnesota Public Utility Commission had adopted the 12 CP method. However, because a remand to the PSC for a hearing under Section 49–02–02(5), N.D.C.C., is necessary, Aggie will have an additional opportunity to be heard on the PSC's decision to take administrative notice of Minnesota's adoption of the 12 CP method. *See* Rule 201(e), N.D.R.Evid.

■ NSP asserts that, because the PSC's order was not stayed and NSP's rates have not been determined to be unreasonable, the district court erred in ordering the PSC to establish refunds of excess rates collected pursuant to the December 13, 1988 order. We agree that a refund is premature. Our conclusion that a refund is premature is consistent with the approach employed in *Northern States Power Co. v. Board of Railroad Commissioners*, 71 N.D. 1, 298 N.W. 423 (1941), and *Northern States Power Co. v. Public Service Commission*, 73 N.D. 211, 13 N.W.2d 779 (1944).

In *Northern States Power Co. v. Board of Railroad Commissioners, supra,* 298 N.W. at 435, this court held that the Board of Railroad Commissioners failed to follow statutory criteria for determining the fair value of property for electric and steam heat ratemaking purposes and we remanded to the Commission with instructions to reconsider the evidence and amend its findings and order in light of our opinion:

"In disposing of the issues raised upon this appeal we have not held that the patrons of the Company were not entitled to a reduction in electric rates, nor that the Company was not entitled to an increase in the steam heat rates. It may well be that after a reconsideration of the facts, in the light of this opinion it will be found that the patrons of the Company are entitled to a substantial reduction in electric rates. If that result be reached, then in justice, the consumers were entitled to the reduction as of the date of the Commission's original order."

In an appeal of the same case after remand, *Northern States Power Co. v. Public Service Commission, supra,* 13 N.W.2d at 790, we held that, in establishing a fair rate of return, the Commission considered evidence which was not part of the record and we remanded to the Commission for reconsideration:

"If the amended order fixing schedules of rates discloses that the company has been collecting excessive charges since the original order of the Commission in this case, the difference between the actual charges made and the proper charges as disclosed by the rates as fixed by the Commission shall be refunded to the company's patrons out of the funds deposited in court and under the direction of the court. Any balance remaining thereafter in the funds deposited in court shall be returned to the company."

■ Those cases support our conclusion that a refund is premature where a remand to the PSC is necessary for compliance with applicable statutory provisions. *See Committee of Consumer Services v. Public Service Commission*, 638 P.2d 533 (Utah 1981). *Cf. Minnkota Power Coop. v. Lake Shure Properties*, 289 N.W.2d 230 (N.D.1980) [where a PSC's notice of hearing on a waiver of corridor and routing procedures was defective, a remand was necessary to correct the procedural defects].

In this case, the PSC failed to comply with the statutory requirements of Section 49–02–02(5), N.D.C.C. If an order, entered after compliance with that section, indicates that NSP's customers have been charged excessive rates, a refund may be appropriate. We therefore conclude that the district court order directing the PSC to establish a method for refunds is premature.

On its cross-appeal, Aggie contends that the district court erred in affirming the PSC's refusal to order NSP to issue a refund to reflect a reduction in NSP's income tax expenses because of the enactment of the Tax Reform Act of 1986.

The Tax Reform Act of 1986 reduced NSP's federal income tax rates effective July 1, 1987. Because the lower tax rate

reduced expenses for utilities, the PSC directed the utilities within its jurisdiction to document the effect of the change in tax rates on its earnings. There was evidence in this case that NSP's reduced expenses from the tax rate reduction were offset by an increased revenue requirement for an additional plant and, consequently, NSP's net earnings did not exceed the amount authorized by its existing rates. The PSC's March 24, 1988 order, which was incorporated into its December 13, 1988 order, found that "[t]ax savings realized in 1987 offset increased expenses incurred in 1987."

■■■ Our review of findings of fact by an administrative agency requires us to determine whether a reasoning mind could have reasonably determined that the agency's factual conclusions were supported by the weight of the evidence. Section 28-32-19(5), N.D.C.C.; *Montana–Dakota Utilities Co. v. P.S.C.*, 413 N.W.2d 308 (N.D. 1987). We do not substitute our judgment for that of the qualified experts of an administrative agency. *Id.* An administrative agency's findings of fact must be adequate for a reviewing court to understand the factual basis upon which the agency reached its conclusion. *Walter v. North Dakota State Highway Commissioner*, 391 N.W.2d 155 (N.D.1986).

■■ We conclude that a reasoning mind could have determined that the PSC's factual conclusions about the effect of the Tax Reform Act of 1986 and NSP's additional increased expenses were supported by the weight of evidence. The PSC's findings were adequate to enable us to understand the basis of its decision and were supported by a preponderance of the evidence. We therefore affirm the district court judgment pertaining to the Tax Reform Act of 1986.

■■ In its appeal, the PSC asserts that the district court erred in awarding Aggie $48,022.86 in attorney's fees pursuant to Section 28-32-21.1, N.D.C.C., which provides in part:

*"Actions against administrative agencies—Attorneys' fees and costs.*

"1. In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and determines that the administrative agency acted without substantial justification.

"2. This section applies to an administrative or judicial proceeding brought by a person against an administrative agency for judicial review of a final order or decision, or the legality of a rule adopted pursuant to this chapter."

The PSC argues that the Legislature did not intend that statute to apply to actions by the PSC in the regulation of electric rates. The PSC contends that the Legislature intended that statute to apply to only "government enforcement actions, such as the imposition of fines, penalties, or sanctions for violations of laws or rules, or civil litigation for recovery of fines and enforcement of agency orders."

However, the language of Section 28-32-21.1(1), N.D.C.C., is not limited in that manner. It allows attorney's fees for "any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or agent of an administrative agency." Subsection 2 also specifies that the statute applies to a proceeding brought for "judicial review of a final order or decision, or the legality of a rule." Section 28-32-21.1, N.D.C.C., does not include an exception for actions involving the regulation of electric rates. Its language is expansive and inclusive. We conclude that Section 28-32-21.1, N.D.C.C., is applicable to PSC rate cases.

■■ The PSC contends that it acted with "substantial justification" within the meaning of Section 28-32-21.1, N.D.C.C., and therefore the district court erred in awarding attorney's fees. Because the meaning of the language "substantial justification" is uncertain, we look for assistance to the legislative history to discern legislative intent.

As originally introduced, Section 28–32–21.1(1), N.D.C.C., required an award of attorney's fees if an administrative agency's action was "without a reasonable basis in fact or in law." *See* 1985 Legislative History SB 2403. During a Senate Judiciary Committee meeting, that phrase was replaced with "substantial justification" for the specific purpose of using the federal interpretation of the same term in the Equal Access to Justice Act of 1980, 28 U.S.C.S. § 2412(d), as a guide for interpreting our statute. February 6, 1985 Minutes of Senate Judiciary Committee regarding SB 2403 and March 11, 1985 Minutes of House Judiciary Committee regarding SB 2403. We therefore look for guidance to federal interpretations of the language "substantially justified."

In *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988), the United States Supreme Court construed "substantially justified" to mean " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." The court observed that "a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce, supra*, 487 U.S. at 565, 108 S.Ct. at 2550, 101 L.Ed.2d at 504. *See Minot Farmers Elevator v. Conrad*, 386 N.W.2d 463 (N.D. 1986) [declining to award attorney's fees on appeal where agency's position, while not persuasive, was reasonable]. Substantial justification thus represents a middle ground between an automatic award of attorney's fees to a prevailing party and an award of attorney's fees for frivolous claims. March 11, 1985 Minutes of House Judiciary Committee regarding SB 2403. Merely because an agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified. *Pierce, supra*.

In *Pierce*, the Supreme Court recognized that the question of substantial justification involves a purely legal issue. Nevertheless, the Court held that the abuse of discretion standard of review applied to an appellate court's review of a district court's determination of whether or not the government's position was substantially justified. *Cf. Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D. 1991) [abuse of discretion standard applies to determination of whether or not a claim is frivolous under Section 28–26–01(2), N.D.C.C.]. The federal appellate courts have recognized that the abuse of discretion standard requires a highly deferential review of a federal district court's determination on the issue of substantial justification. *Pierce, supra; McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468 (1st Cir.1989); *Pirus v. Bowen*, 869 F.2d 536 (9th Cir.1989). We believe that the rationale of *Pierce* provides persuasive authority for construing Section 28–32–21.1, N.D.C.C., and we apply the standards from *Pierce* to our statute.

■ In this case, the district court determined that "the PSC acted without substantial justification and beyond its statutory powers." Aggie argues that the PSC acted without substantial justification because it accepted the offer of settlement without a hearing in violation of Section 49–02–02(5), N.D.C.C. The PSC contends that it acted with substantial justification because it essentially followed a method of approving a settlement offer which it claims was upheld in *Transportation Division of the Fargo Chamber of Commerce v. Sandstrom*, 337 N.W.2d 160 (N.D.1983). However, *Fargo Chamber* is inapposite. In this case, the PSC did not follow the statutory requirement that there be a hearing whenever all the interested parties are not in agreement. Applying a deferential standard of review to the district court's determination, we cannot say that it abused its discretion in determining that the PSC's actions were not substantially justified.

The PSC contends that the district court erred in determining the amount of reasonable attorney's fees because PSC was given neither notice of the amount of fees sought nor an opportunity to be heard on the issue.

This record reflects that Aggie first indicated that it was seeking attorney's fees in a proposed order for judgment prepared pursuant to the district court's ruling from the bench. That proposed order included language that the PSC "acted without substantial justification" and allowed Aggie to "recover reasonable attorneys' fees hereby fixed in the amount of $___, to be paid by PSC pursuant to Sec. 28–32–21.1, N.D.C. C." The proposed order contemplated an award of attorney's fees because the PSC acted without substantial justification but the order did not specify an amount of attorney's fees. In a letter dated June 13, 1990, the PSC responded to the proposed order, asserting that its actions were substantially justified. Thereafter, Aggie's attorneys apparently submitted affidavits dated June 21, 1990 and July 5, 1990, to the district court with itemized lists of their services in the district court and in the first appeal to this court. However, this record does not indicate that the PSC was served[6] with those documents until after the court signed the final order on July 9, 1990, allowing $48,022.86 in attorney's fees.

 In *Westchem Agricultural Chemicals, Inc. v. Engel*, 300 N.W.2d 856, 859 (N.D.1980), we addressed an analogous situation on the determination of the amount of attorney's fees under Section 28–26–31, N.D.C.C.:

> "Although the court may determine that the pleading was made without reasonable cause, the court must nevertheless allow the litigant an opportunity to present evidence in rebuttal and to cross-examine as to the reasonableness of the amounts claimed."

Although a request for attorney's fees should not result in a second major litigation [*Pierce, supra* ], we believe that the PSC should be allowed to contest the amount of attorney's fees awarded to Aggie in this case. Because the PSC was not given the opportunity to be heard on that issue, a remand to the district court is necessary for the purpose of determining reasonable attorney's fees under the criteria in *Hughes v. North Dakota Crime Victims Reparations Board*, 246 N.W.2d 774 (N.D.1976).

 Aggie has also requested reasonable attorney's fees for this appeal. Section 28–32–21.1(1), N.D.C.C., authorizes reasonable attorney's fees for "any civil judicial proceeding." Under similar provisions of the Equal Access to Justice Act, the federal courts allow reasonable attorney's fees incurred in defending an appeal. *Jones v. Lujan*, 887 F.2d 1096 (D.C.Cir. 1989); *McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468 (1st Cir.1989). *See Minot Farmers Elevator v. Conrad, supra*.

In awarding attorney's fees on appeal in comparable situations, a majority of this court has usually remanded to the trial court for a determination of the amount of reasonable attorney's fees. *Troutman v. Pierce, Inc.*, 402 N.W.2d 920 (N.D.1987); *see Carlson v. Dunn County*, 409 N.W.2d 111 (N.D.1987) [recognizing rule but awarding attorney's fees without remand because opposing party failed to file reply brief or otherwise respond to request for attorney's fees on appeal]; *but see United Bank of Bismarck v. Young*, 401 N.W.2d 517 (N.D.1987) [token amount of attorney's fees awarded by supreme court for frivolous appeal].

In this case, judicial economy dictates that the district court determine reasonable attorney's fees for this appeal. The district court will be determining the closely interrelated issue of reasonable attorney's fees for the "civil judicial proceeding[s]" in the district court. Because the criteria for determining the amount of those attorney's fees are generally applicable for determining reasonable attorney's fees for appeals to this court [*see Hughes, supra* ], we direct the district court, on remand, to determine the amount of attorney's fees to be allowed for this appeal.

The district court judgment is affirmed in part, reversed in part, and the case is

---

6. *See* Rules 5(f), and 4(h), (i), (j), N.D.R.Civ.P.

remanded to the district court for it to determine reasonable attorney's fees and for it to remand to the PSC for a hearing on the propriety of the acceptance of the offer of settlement.

VERNON R. PEDERSON, Surrogate Judge, HUNKE, D.J., and MESCHKE, J., and GIERKE, Acting C.J., concur.

VERNON R. PEDERSON, Surrogate Judge and HUNKE, D.J., sitting in place of ERICKSTAD, C.J., and VANDE WALLE, J., disqualified.